UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| IN RE: <br><br> CLEAN BURN FUELS, LLC <br><br> Debtor | Case No. 11-80562 <br> Chapter 11 |
|---|---|
| **Motion To Employ Financial Consultant And Chief Restructuring Officer For Debtor** ||

NOW COMES Clean Burn Fuels, LLC (the "Debtor") and moves the Court pursuant to §327 of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure as follows:

1. On April 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and an Order for relief was entered. The Debtor continues in possession of its assets and operates its businesses as a debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The Debtor wishes to retain and seek approval by this Court of the employment of Anderson Bauman Tourtellot Vos & Co. ("ABTV") as financial consultant and chief restructuring officer for the Debtor. The professional services ABTV would offer include:

    a. To give the Debtor advice with respect to the operation of its business, including an evaluation of the desirability of the continuance of such business, the ability and means by which some or all of the assets could be refinanced or liquidated to generate cash for the payment of such claims as may be allowed in this proceeding, and any other matter relevant to the case or to the formulation of a plan.

    b. To assist the Debtor in the preparation and filing of all necessary schedules, statements of financial affairs, reports, a disclosure statement, and a plan.

    c. To provide interim management services to the Debtor.

1

   d.  To perform such other financial services as may be requested by Bankruptcy Counsel from time to time and in the interest of the Debtor.

  4.  ABTV represents no other entity in connection with this case, represents or holds no interest adverse to the interest of the estate with respect to the matters on which it is to be employed, and is disinterested as that term is defined in 11 U.S.C. §101. ABTV has agreed to represent the Debtor for such compensation as may be subsequently allowed and approved in accordance with the provisions of the Bankruptcy Code. ABTV has filed herewith an affidavit pursuant to Bankruptcy Rules 2014 and 2016, disclosing the information relevant to this Motion.

  5.  ABTV can and will provide specific benefits to the Debtor and its services will enhance the administration of this case. The Debtor believes that such services will be in the best interest of all parties involved in this proceeding.

  Wherefore, the Debtor prays the Court for the following relief:

  1.  Approve the employment of ABTV as financial consultant and chief restructuring officer for the Debtor in this case.

  2.  Such other relief as the Court may deem necessary and proper.

  RESPECTFULLY submitted on behalf of the Debtor, this the 3rd day of April, 2011.

            /s/ John A. Northen

**Counsel for the Debtor:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

2

Case 11-80562 Doc 6 Filed 04/03/11 Page 2 of 8

# AFFIDAVIT

I, Peter L. Tourtellot, do solemnly depose and declare as follows:

1. I am a certified turnaround professional and a managing director of Anderson Bauman Tourtellot Vos & Co. ("ABTV").

2. ABTV has been retained to serve as financial consultant and chief restructuring officer for the Debtor in this case. A copy of the engagement letter is attached hereto and incorporated by reference. ABTV holds no interest adverse to the above-entitled estate and therefore am a disinterested person as defined in 11 U.S.C. Section 101.

3. The total compensation promised ABTV by the Debtor for the services rendered or to be rendered in connection with this case will be such amounts as may be approved by the Court after notice and hearing, and based upon the customary hourly rates charged at the time such services are rendered.

4. No compensation has been received by ABTV from the Debtor or any other person on said account, except as follows:

    a. ABTV received an initial retainer from the Debtor in the amount of $140,000, of which $18,108.13 has been expended in payment of prepetition services and expenses. The unexpended balance of the retainer is held by ABTV as security for such post-petition fees and expenses as may be allowed by the Court.

    b. The retainer deposit is and will be fully refundable to the extent not used in payment of services provided to or for the benefit of the Debtor.

5. There are no further undertakings by these or any other persons or entities to pay the post-petition fees or expenses of the Debtor. ABTV further states that no understanding or agreement exists for a division of fees or compensation between ABTV and any other person or entity.

I declare under penalty of perjury that the foregoing is true and correct.

This the 3rd day of April, 2011.

/s/ _____
Peter L. Tourtellot
Managing Director, ABTV

3

ANDERSON BAUMAN TOURTELLOT VOS

March 24, 2010

**Confidential**

Mr. Kirk J. Bradley
Chairman
Clean Burn Fuels, LLC
269 Pate Road
Raeford, NC 28376

Dear Kirk:

    Clean Burn Fuels, LLC (the "Company") and Anderson Bauman Tourtellot Vos & Co. ("ABTV") have agreed that ABTV shall provide certain consulting services to the Company on the terms and conditions set forth in this engagement letter, which includes the general terms and conditions set forth on the attached Exhibit A.

    The services that ABTV shall provide to the Company (the "Services") are as follows:

    ABTV will be engaged as Chief Restructuring Officer (CRO) to assist the Company in identifying, evaluating, and making recommendations regarding alternatives for resolving issues associated with its recent decision to file for protection under Chapter 11 of the U.S. Bankruptcy Code. The objective is to identify an economically viable business model for the Company to emerge from Chapter 11 under the control of existing shareholders, and assist the Company with articulating the plan, subject to your prior consent and approval, to its key stakeholders including current and prospective shareholders, lenders, vendors, customers, employees and government authorities (where pertinent). ABTV will explore all options; including the possibility of an eventual sale should an economically viable operating model not be achievable.

    As CRO for the Company ABTV shall provide interim management services to the Company with the long-term objective, but without any guarantee, to maintain and improve the Company's financial position and profitability and to mentor and train the senior management of the Company and to serve as an agent of the Company in connection with providing such services. The Company acknowledges and agrees that ABTV will be assuming and relying upon the truth and accuracy of the information provided by the Company and that the services to be provided by ABTV hereunder will require the participation and cooperation of management and representatives of the Company. The Company expressly acknowledges that ABTV does not guarantee, warrant, or otherwise provide any assurances of any particular outcome of this engagement.

Renaissance Plaza > 230 North Elm Street, Suite 1650 > PO Box 2338 > Greensboro, NC 27402
(P) 336.275.9110 > (F) 336.275.1551 > www.abtv.com

ABTV shall conduct a comprehensive business analysis of the Company, which will include visits to your facilities; review of the existing business plan, management reports, and financial projections; discussions with officers, other management personnel, and selected other employees; and evaluations based on financial and operational records (the "Operational Review"). As part of this process we would, if appropriate, also talk with the Company's accounting firm, review loan agreements, and meet further with the Company's lenders. Subject to your prior consent and approval, we may also like to talk with selected vendors and customers. At the completion of the Operational Review, we will present you with a written report and an oral presentation of our findings and recommendations. If you desire, we can present our findings to other parties including your lenders and additional shareholders. Specifically, we will review the facility, operations, logistics, purchasing, distribution, inventory controls and procedures, depth, experience, and capabilities of management personnel, general systems analysis, financial accounting and reporting, profitability by line of business, cash and treasury management, general finance and banking, credit and collections. At the conclusion of our review we will have general observations and recommendations in conjunction with your bankruptcy counsel.

ABTV will provide a representative ("Representative") who will be an independent contractor with respect to the Company and shall not be deemed to be an employee of the Company for any purpose. Representative shall be entitled to indemnification provided Company officers and directors under the Company's Bylaws but no less than the maximum indemnification authorized by the laws of North Carolina. The Company shall maintain directors and officers liability insurance in an aggregate amount not less than $5,000,000 protecting the directors and officers and their agents against acts arising from their duties as a director, officer and agent for which they become personally liable and are not compensated by the Company pursuant to any indemnification provisions, and the Representative shall be named as an insured thereunder. If for any reason the Representative becomes unable to perform his duties because of other commitments or otherwise, ABTV will appoint a successor, or successors, reasonably acceptable to the Company, and each such successor shall have all the rights and obligations of the ABTV Representative under this Agreement. Ed Sanz of ABTV will be the designated Representative and will principally perform the Services.

ABTV may, from time to time, provide other professionals of ABTV to fulfill its obligations hereunder as it deems appropriate. If ABTV is being engaged on a monthly retainer basis, ABTV will provide such professionals without additional charge to the Company; otherwise the normal consultant's hourly rate ($350.00) will prevail, and the Representative and other ABTV employees assigned to the Company by ABTV shall be considered for purposes of this Agreement as "ABTV Consultants." ABTV retains the discretion to determine the amount of time the Representative and such other ABTV Consultants devote to the Company pursuant to this Agreement. Nothing in this paragraph is intended to imply that ABTV will provide outside professionals, such as attorneys, accountants and consultants, other than ABTV Consultants, at no charge to the Company, it being contemplated that such persons shall be engaged at the expense of the Company.

In the event the Company requires additional services that are not outlined above, ABTV and the Company will mutually agree on the additional fees for such services prior to ABTV performing the services.

ABTV fees are based on the hours actually incurred by each principal and staff member and the standard hourly billing rate for that individual. ABTV's current hourly rate for Mr. Sanz is $350 per hour. Administrative support is billed at $95 per hour. A retainer in the amount of $140,000 will be required and is due in advance of the first day. This retainer is not intended to be an estimate for the



ANDERSON BAUMAN TOURTELLOT VOS

total cost of work to be performed on this engagement. ABTV grants the Company the option to engage the services of the company on a fixed monthly fee of $40,000 subject to the approval of the court. The Company agrees, if the Company is not in Chapter 11, to refresh the retainer back to $140,000 when it reaches $75,000. At the conclusion of the engagement, the final bill will be netted against the retainer and any excess will be returned to the Company.

ABTV will also be reimbursed for out-of-pocket expenses including, but not limited to, travel, lodging and meals. Travel time will be billed at one-half the normal hourly rate, which equates to $175.00 per hour. Fees and expenses will be paid as and when approved by the Bankruptcy Court in accordance with the applicable fee applications guidelines, which require that the approved fees be paid first from the retainer until exhausted and then by the Company.

You have represented to us that your state does not require ABTV to collect sales or similar taxes on the Services. However, should ABTV be required to pay any such taxes, you will indemnify us and hold us harmless against the payment of such taxes and any fees and expenses, including reasonable attorneys' fees that ABTV may incur in connection with any such assessment. ABTV will also be entitled to compensation at its normal rates for any time and expenses, including reasonable attorneys' fees, that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings arising from or relating to ABTV's performance of the Services. In the event that ABTV retains an attorney or otherwise pursues legal remedies in order to collect amounts owed to it under this engagement letter, the Company will reimburse ABTV for all such costs and attorneys' fees.

If you agree to the terms and conditions of this engagement set forth above, please sign one copy of this engagement letter and return it to me, keeping the other for your files. We look forward to working with you and your team.

With best regards,

ANDERSON BAUMAN TOURTELLOT VOS & CO.

Peter L. Tourtellot, CTP
Managing Director

Agreed and accepted this 25th day of March, 2011,

CLEAN BURN FUELS, LLC

By: _____
Title: CHAIRMAN

ANDERSON BAUMAN TOURTELLOT VOS

# EXHIBIT A

## General Terms and Conditions

1.  Subject to the Company's continued obligation to pay the fees and out of pocket expenses incurred to the date of termination, the Company may terminate this engagement at any time upon written notice, and ABTV may terminate this engagement at any time upon written notice. Any part of the fees paid up to the time of termination will be deemed to have been earned. Any portion of the fees not paid at termination will be paid in whole or in part based upon ABTV's good faith determination of the percentage of the Services that have been earned at the time of the termination.

2.  The parties intend that an independent contractor relationship will be created by this engagement letter. As an independent contractor, ABTV will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents. ABTV shall retain sole and exclusive ownership of and all right, title and interest in and to its know-how, concepts, techniques, methodologies, ideas, processes, models, routines and trade secrets that existed prior to this engagement or that, to the extent they are of general application, may have been discovered, created or developed by ABTV as a result of its own efforts during this engagement.

3.  During the term of this engagement, ABTV will report to, and take its direction from, Kirk Bradley as the designee of the Company's Board of Directors. The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate information, representations, and books and records upon which ABTV may rely and that ABTV will be assuming and relying upon the truth and accuracy of the information provided by the Company.

4.  ABTV shall not be liable for any delays or non-performance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the Company, acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God or any law, order or requirement of any governmental agency or authority. The Company will indemnify ABTV and its representatives against any claim, damages or liability related to its performance of the Services and for any fees and expenses related to the defense of any such claims, damages or liabilities, including interest, penalties and reasonable attorneys' fees and disbursements. Any liability of ABTV in connection with the engagement shall be limited to the amount of fees paid to it. In no event shall ABTV have any liability, whether in contract, tort or otherwise, for any incidental, special, punitive, indirect or consequential damages.

5.  The Company agrees to promptly notify ABTV if it or any of its subsidiaries or affiliates hires a principal or employee of ABTV involved in the engagement at any time up to one year subsequent to the date of the payment of all invoices rendered by ABTV with respect to the engagement and agrees that the Company will pay ABTV a cash fee, upon such hiring, equal to 100% of the aggregate first year's annualized salary compensation, plus any guaranteed bonus, to be paid by the Company to ABTV's former principal or employee.



ANDERSON BAUMAN TOURTELLOT VOS

6.  This engagement letter constitutes the entire understanding between the parties with respect to the subject matter and supersedes all prior written and oral proposals, understandings, agreements and/or representations, all of which are merged herein. Any amendment or modification of this engagement letter shall be in writing and executed by each of the parties. All payment and indemnification obligations hereunder are intended to survive any termination or expiration of this engagement letter and shall continue to bind the parties. Any dispute or controversy arising between the parties arising out of this engagement letter, other actions for the payment of amounts owed to ABTV hereunder, shall be submitted to arbitration at Greensboro, North Carolina, pursuant to the Commercial Rules of the American Arbitration Association by an arbitrator mutually agreed upon by the parties.

7.  We recognize and acknowledge that certain information and documentation, which we may receive in connection with our engagement is proprietary and confidential, including, without limitation, non-public financial and business information and documents hereafter furnished to us by the Company. By signing this Agreement, we confirm and agree that, without the prior consent of the Company, we will not disclose, distribute, publish or release to any third party (counsel to the Company and any person or entity authorized by the Company to receive any such information, are not considered third parties) any non-public information or documents now or hereafter received or obtained by us in this engagement, except as required by law, subpoena, or other process and as to which we will, if possible, provide the Company prior notice. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of acts by us.

ANDERSON BAUMAN TOURTELLOT VOS