UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

In re: )
)
CLEAN BURN FUELS, LLC, ) Case No. 11-80562
) Chapter 11
)
Debtor. )
_____)

## KATZEN INTERNATIONAL, INC.'S LIMITED OJBECTION TO MOTION FOR RELIEF FROM STAY FILED BY CAPE FEAR FARM CREDIT, ACA

KATZEN International, Inc. ("KATZEN"), by and through its undersigned attorneys, hereby objects on a limited basis to the Motion for Relief from Stay filed by Cape Fear Farm Credit, ACA ("CFFC"), and states as follows:

### BACKGROUND

1. Debtor and Debtor-in-Possession Clean Burn Fuels, LLC ("CBF") filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on April 3, 2011.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this motion constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A). Venue for this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. KATZEN is a professional services firm based in Cincinnati, Ohio, that provides consulting services and licenses its technology to parties designing, constructing and operating ethanol plants throughout the world. KATZEN has developed proprietary know-how and inventions relating to the production of Motor Fuel Grade Ethanol ("MFGE").

4. KATZEN entered into a License Agreement with CBF, effective November 7, 2006, relating to the construction of the Project. The operative documents containing the terms of the licensing relationship are as follows (collectively referred to as the "License Agreement"):

- License Agreement, effective October 11, 2006

- Consulting Services Agreement, effective November 7, 2006

- Letter Agreement, February 19, 2009

- Modification Agreement, February 19, 2009

A copy of the relevant portions of the License Agreement is attached and incorporated herein as **Exhibit A**.

5. The License Agreement describes KATZEN's proprietary technology as the "Licensed Process." That term is defined in Section 1.1 of the License Agreement to mean:

> Any process utilizing KATZEN Developments for MFGE and animal feed byproducts production to yield improved recovery and efficiency, together with related proprietary know-how and/or related patents or patent applications owned by [KATZEN].

6. Article IV of the License Agreement, titled "Confidentiality and Non-Use," requires CBF to protect all of KATZEN's confidential and proprietary information from disclosure to third parties. In § 4.1 of the License Agreement, "Information" is defined to include "confidential know-how, trade secrets, unpublished inventions, and other proprietary Information in the field of MFGE production, and processes and products related thereto . . . ." CBF agreed in the License Agreement that any Information disclosed in conjunction with the Project would be kept protected according to the standards described therein. Use of such information is even restricted with respect to employees and contractors, who are only allowed access on a "need to know" basis. *See* License Agreement, § 4.4.2.

7. Pursuant to the terms of the License Agreement, KATZEN provided written plans and other documents to CBF containing Information, as that term is defined in the License Agreement. Once construction commenced at the Project, the Information became incorporated into the physical plant. The sale of the Project or any of its component parts cannot be conducted without an unauthorized disclosure of the Information.

## ARGUMENT

8. The License Agreement specifies that Ohio law is to be applied. Ohio has adopted the Uniform Trade Secrets Act. *See* Ohio Revised Code ("O.R.C."), § 1333.61, *et seq.*[1]

9. A "trade secret" is defined under the O.R.C. § 1333.61(D) as:

> [I]nformation, including the whole or in portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both the following:

---

[1] The North Carolina Trade Secrets Act, which is virtually identical to the Uniform Trade Secrets Act, is found at N.C. General Statutes 66-152 et seq.

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Here, the confidential and proprietary information provided to CBF by KATZEN pursuant to the terms of the License Agreement falls within the definition of trade secret. It consists of specialized technology for the manufacture of MFGE using unique processes and methodologies invented exclusively by KATZEN. These trade secrets were disclosed to CBF according to the terms of the License Agreement, which specifies that confidentiality is to be strictly protected.

10. Under O.R.C. § 1333.61(B), "misappropriation" is defined to include disclosure or use of a trade secret without the express or implied consent, where the party making the disclosure is aware that the information "was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ." CBF is bound under the terms of the License Agreement to protect the confidentiality of the trade secrets in its possession. Its failure to do so constitutes a misappropriation under Ohio's version of the UTSA.

11. Actual or threatened misappropriation of a trade secret may be enjoined under O.R.C. § 1333.62(A). The Court may also order affirmative acts to protect a trade secret under O.R.C. § 1333.62(C). Damages, including punitive damages, are available to compensate for losses suffered as a result of a misappropriation under O.R.C. § 1333.63.

12. As indicated above, the UTSA specifically provides for injunctive relief in the event of an actual or threatened misappropriation of proprietary information. This is in recognition of the fact the monetary damages are generally inadequate to compensate for a breach of confidentiality provided under the License Agreement. As noted in 4 Milgrim on Trade Secrets, § 15.02[1][a], "that equity will protect against the unwarranted disclosure or use of a trade secret is 'settled beyond peradventure'." (Citing *Empire Steam Laundry Co. v. Lozier*, 165 Cal. 95, 130 P. 1180, 1182 (1913).) See also *Kodekey Electronics, Inc. v. The Mechanex Corp.*, 486 F.2d 449, 458 (10th Cir. 1973).

13. It is anticipated that CFFC will take possession of the Project upon obtaining relief from the automatic stay. Actions taken by CFFC or its agents towards the marketing and

sale of the Project or any of its component parts necessarily threatens unauthorized disclosure of KATZEN's proprietary information. KATZEN is entitled to an order conditioning relief from stay in the following fashion:

- CFFC must execute KATZEN's standard confidentiality and non-use agreement and be bound by the terms and conditions thereof.

- All parties inspecting the Project, whether creditors, consultants or potential purchasers or trustee must be required to sign KATZEN's standard confidentiality and non-use agreement and be bound by the terms and conditions thereof. KATZEN must be provided a copy of said agreement before the party is given access to KATZEN's Information.

- All advertising and similar materials to be distributed in hard copy or electronically to creditors or interested parties in the bankruptcy proceeding and to potential purchasers which contain or reflect KATZEN's Information must be approved by KATZEN, in writing, in advance. This includes all information placed on websites that contain KATZEN Information.

- All plans, drawings and written or electronic information containing KATZEN's Information and all copies thereof shall be kept confidential. Any person being permitted access to such Information, including drawings, specifications, whether written or electronic, must sign KATZEN's confidentiality and non-use agreement and be bound by the terms and conditions thereof.

- All identification of KATZEN's Information contained on name plates attached to any of the equipment must be removed before individual pieces of equipment can be sold. KATZEN must inspect the equipment before it is offered for sale in order to ensure compliance.

- Prior notification to KATZEN must be given before any auction or other sale of the Project or equipment. KATZEN shall be entitled to attend any auction in order to ensure that its Information is protected.

- No purchaser of the Project or equipment has any right to use KATZEN's Information without obtaining a license from KATZEN.

- KATZEN must approve, in writing, any proposed assignment of KATZEN's license agreement or consulting services agreement

14. Relief from stay should not be granted unless and until CFFC agrees or is ordered to protect KATZEN's Information, as set forth above.

WHEREFORE, KATZEN respectfully requests that the Court enter its Order denying the CFFC's Motion for Relief From Stay unless CFFC agrees to protect KATZEN's Information, as set forth above, and for such other and further relief as is appropriate.

Dated: June 14, 2011                    /s/ Richard M. Hutson II
                                        Richard M. Hutson II
                                        HUTSON LAW OFFICE, P.A.
                                        302 East Pettigrew Street, Suite B-260
                                        P.O. Drawer 2252-A
                                        Durham, NC 27702
                                        Telephone:   919-683-1561
                                        Facsimile:   919-281-5270
                                        E-mail:      hutson@hhplaw.com


                                        Brent R. Cohen, Colo. Reg. No. 11298
                                        ROTHGERBER JOHNSON & LYONS LLP
                                        1200 17th Street, Suite 3000
                                        Denver, CO 80202-5855
                                        Telephone:   303.623.9000
                                        Facsimile:   303.623.9222
                                        E-mail:      bcohen@rothgerber.com
                                                     ccaby@rothgerber.com

                                        *Counsel for KATZEN International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing Limited Objection upon each of the parties either by electronic noticing or first class mail, postage prepaid addressed as follows:

Michael D. West, Esq.       bancm_ecf@ncmba.uscourts.gov
John A. Northen, Esq.       jan@nbfirm.com
Benjamin A. Kahn, Esq.      bkahn@nexsenpruet.com
Charles M. Ivey, III, Esq.  jlh@imgt-law.com


This the 14th day of June, 2011.

                                        s/ Richard M. Hutson II
                                        Richard M. Hutson II

REE PWM
CWW G.H.
PLH
File

WH 003/P2006-51
October 11, 2006

## LICENSE AGREEMENT

This AGREEMENT dated and effective as of October 11, 2006 is made by and between KATZEN International, Inc., a corporation of the State of Ohio, (hereinafter called "Licensor" or "KATZEN"), having offices located at 2300 Wall Street, Suite K, Cincinnati, Ohio 45212, USA, and Clean Burn Fuels, a corporation organized and existing under the laws of the state of North Carolina (hereinafter called "Licensee"), having offices at 109 Willesden Drive, Cary, NC 27513.

### WITNESSETH:

WHEREAS, Licensor has developed proprietary know-how and inventions relating to improvements in the production of Motor Fuel Grade Ethanol (MFGE), and processes and products related thereto,

Hereinafter called "KATZEN Developments"; and

WHEREAS, Licensee wishes to obtain rights to use KATZEN Developments for operation of a nominal 55 Million (MM) Gallons per Year (GPY) (undenatured basis) ethanol plant located in Hoke County, North Carolina

Hereinafter called "Plant".

NOW, THEREFORE, in consideration of the premises, the licenses granted herein, and the agreements, covenants and conditions herein contained, it is agreed as follows:

Initial AWM NC
Date 12/3/06  12-3-06

KATZEN
INTERNATIONAL, INC.

## I. DEFINITION

1.1 The term "Licensed Process" as used herein shall mean any process utilizing KATZEN Developments for MFGE and animal feed by-products production to yield improved recovery and efficiency, together with related proprietary know-how and/or related patents or patent applications owned by Licensor.

## II. LICENSE AND TECHNICAL INFORMATION

2.1 Licensor hereby grants to Licensee the perpetual nonexclusive right to use Licensed Process in connection with the operation of Plant to the extent that said Plant is operated at a nominal capacity not exceeding 173,000 Gallons Per Day (GPD) (undenatured basis). This license shall apply only to said installation and only to such nominal capacity. If Licensee increases capacity of Plant to a new capacity beyond 173,000 GPD utilizing KATZEN Developments, an additional license fee will be due according to the following formula:

$$US\$1,069,250 \times \left[\left(\frac{New\ Capacity}{173,000}\right)^{0.75} - 1\right]$$

Upon payment of the additional fee according to the above formula, this license shall apply only to said Plant and only to such new capacity. Any other plant(s) to be operated by Licensee shall be covered by separate and individual License Agreement(s).

## III. COMPENSATION

3.1 All fees are stated as net to KATZEN. All payments under this Agreement shall be measured and valued upon receipt at KATZEN's bank in the United States of America, free and clear of any taxes, imposts, duties, etc.,

Initial PWM DC
Date 12/7/08 12-3-08

2

**KATZEN** INTERNATIONAL, INC.

which may be imposed by a non-USA entity. A total License Fee of US$971,250 shall be due for the non-exclusive license of patent and know-how rights for Plant under this Agreement. Licensee shall pay to Licensor a fixed fee of US$500,000 upon notice to begin Plant startup or 3 years from the date of this Agreement whichever occurs first. A final fixed-fee payment of US$471,250 shall be paid by Licensee to Licensor after operation of Plant to achieve design performance as stated in EXHIBIT A or within 3½ years from the date of this Agreement whichever occurs first. Thereafter, this License shall be considered paid up as to Plant for the Licensed Capacity stated in 2.1 above as 173,000 GPD. However, the obligations of Licensee to Licensor as stated in this Agreement shall survive such payment.

## IV. CONFIDENTIALITY AND NON-USE

4.1 WHEREAS, KATZEN possesses confidential know-how, trade secrets, unpublished inventions, and other proprietary Information in the field of MFGE production, and processes and products related thereto (hereinafter called "Information"); and

WHEREAS, KATZEN desires to disclose such Information to Licensee, and Licensee is willing to receive such disclosures in accordance with the terms and conditions hereof; and

WHEREAS, Licensee desires to receive this Information solely for Licensee's use in building and operating a MFGE plant to be located in Hoke County, North Carolina (hereinafter called "Project").

NOW, THEREFORE, in consideration of the mutual promises herein set forth, the parties hereto agree as follows:

Initial PWM DC
Date 12/3/08  12-3-08

**KATZEN**
INTERNATIONAL, INC.

3

Case 11-80562  Doc 165  Filed 06/14/11  Page 8 of 20

4.2  **Term:**

4.2.1 Term of Confidentiality shall mean the period of time commencing on the date hereof and ending ten years after the last disclosure or use of Information.

4.3  **Disclosure and Use:**

4.3.1 KATZEN agrees to disclose Information to Licensee so as to enable Licensee to carry out its ordinary and necessary functions in connection with Project.

4.3.2 Licensee agrees to receive disclosure of Information from KATZEN for the sole purpose of executing Project, and agrees that it will not disclose the Information to any other parties nor use Information for any other purpose whatsoever, until it has acquired the right to do so in writing from KATZEN in a manner in accordance with this Agreement.

4.3.3 Licensee agrees that the provisions of confidentiality and non-use contained in this Article IV shall survive any termination of the License granted to Licensee.

4.4  **Confidentiality:**

4.4.1 Subject to the terms of this Agreement, Licensee shall hold secret and confidential all Information of which Licensee acquires knowledge. Licensee will not disclose, publish or reproduce in whole or in part either orally or written, or embodied in materials, including, but not limited to samples, reports, drawings, sketches, photographs, data sheets, books, machines, models or any other documents, any Information, whether it becomes aware of such Information by operation of this Agreement or otherwise.

4.4.2 Licensee shall have the right, during the term of this Agreement, to communicate Information only to such of its officers, employees,

Initial  PWM  DC
Date   12/3/08   12-3-08

4

**KATZEN**
INTERNATIONAL, INC

Case 11-80562    Doc 165    Filed 06/14/11    Page 9 of 20

advisors, agents, contractors, subcontractors and other representatives and government and regulatory authorities, as required by law and provided that said Information is not open to the public by said government or regulatory authority, as are required by their duties to have knowledge thereof only on a "need to know" basis or for any other purpose that KATZEN may hereafter authorize in writing. In the event Licensee or any Representative (or anyone to whom confidential Information is furnished by such party pursuant to this Agreement) is required by law to disclose any confidential Information, such person will provide KATZEN with prompt notice thereof so that KATZEN may seek a protective order or other appropriate remedy. In any event, the person subject to such required disclosure will furnish only that portion of the confidential Information which is legally required to be furnished and will use its utmost care and due diligence to obtain assurances that confidential treatment will be accorded to that portion of the confidential Information so furnished.

4.4.3 Licensee shall ensure that all of its employees or persons who are necessarily given access to Information in accordance with paragraph 4.4.2 hereof shall be immediately advised of its confidential nature, the existence and importance of this Agreement, and prior to being granted such access, shall have executed a copy of this Agreement or an agreement satisfactory to KATZEN. Notwithstanding the above, however, if Licensee is required by law or valid court order to disclose certain Confidential Information without having the person receiving such information sign a Confidentiality Agreement, Licensee shall be free to disclose said Confidential Information after complying with the terms of paragraph 4.4.2 above.

4.4.4 The obligations of confidentiality and nondisclosure of Licensee contained in 4.4 shall terminate with respect to Information when

Initial *PWM 12-2-08*
Date *12/3/08*

**KATZEN**
INTERNATIONAL, INC

5

Case 11-80562    Doc 165    Filed 06/14/11    Page 10 of 20

Licensee can show to the reasonable satisfaction of KATZEN that the Information:

i. Was in the public domain at the time of KATZEN's disclosure thereof to Licensee;

ii. Entered the public domain through no fault of Licensee subsequent to the time of KATZEN's disclosure thereof to Licensee;

iii. Was in Licensee's possession, free of any obligation of confidentiality at the time of KATZEN's disclosure thereof to Licensee; or

iv. Was disclosed to Licensee in good faith by a third party which has the right to make such disclosure subsequent to the time of KATZEN's disclosure thereof to Licensee.

For the purpose of the provisions of this paragraph, disclosures made to Licensee under this Agreement which are specific, e.g., as to engineering and design practices and techniques, equipment, products, operating conditions, and/or catalysts for treating a specific feedstock, etc. shall not be deemed to be within the foregoing exceptions merely because they are embraced by general disclosures in the public domain or in the possession of the Licensee. In addition, any combination of features shall not be deemed to be within the foregoing exceptions merely because individual features are in the public domain or in the possession of Licensee, but only if the combination itself (and its principle of operation) are covered by the exceptions.

4.4.5 Licensee shall exercise all reasonable efforts to keep Information disclosed by KATZEN secret and confidential. In fulfilling this obligation, Licensee shall use at least the same standard of care in safeguarding the Information from unauthorized disclosure as it uses in safeguarding its own proprietary information.

Initial PWM DC
Date 12/3/08  12-3-08

KATZEN
INTERNATIONAL, INC

6

Case 11-80562   Doc 165   Filed 06/14/11   Page 11 of 20

4.5  Property:

4.5.1 All improvements, inventions, know-how and discoveries, whether or not patentable, all Information and technology, and all patents arising out of or relating to Information shall be and remain the exclusive property of KATZEN and/or its affiliates or subsidiaries. Licensee understands and agrees that nothing in this Agreement, nor in the disclosure of Information to Licensee shall be deemed by implication or otherwise, to convey ownership or title, or any other rights for license thereto or thereunder to Licensee or any person in privity therewith, of any trade secrets, patent rights, Information or other proprietary rights of KATZEN, except as provided for in this License Agreement.

4.5.2 During the term of this Agreement, Licensor shall have the right to bring visitors to tour the Plant provided, however, that Licensor provides notification to Licensee and provided, further, that visitors may only be permitted into the Plant after approval of Licensee which approval will not be unreasonably withheld. Further, KATZEN shall have the right to identify the project in its normal and customary manner in its corporate communications.

4.6  Interpretation and Enforcement:

4.6.1 This Agreement contains the entire Agreement of the parties, and any and all previous Agreements, written or oral, between the parties, or on their behalf, relating to the disclosure of confidential Information as it pertains to the Project as defined in this Agreement by KATZEN to Licensee, are hereby terminated and cancelled and shall be of no effect as to future disclosures. Nonetheless, said prior confidentiality agreements shall remain in effect as to all previously disclosed confidential information. No amendment or

Initial _PWM_ _DC_
Date _12/3/08_ _12-3-08_

KATZEN
INTERNATIONAL, INC.

7

Case 11-80562   Doc 165   Filed 06/14/11   Page 12 of 20

variation of any provisions of this Agreement shall be valid unless made in writing and signed by each of the parties hereto.

## V. WARRANTIES AND LIABILITIES

5.1 Licensor warrants that the work and services and the goods referred to herein shall be provided in the light of Licensor's experience. Licensor will include in the design the most advanced proven technology in accordance with KATZEN's best judgment. Notwithstanding anything else in this or any other agreement, Licensor makes no other warranties, express or implied, and shall not be liable for or obligated in any manner to pay any losses, damages, claims or demands arising out of the work or services performed hereunder, except as follows. If the process shall fail to achieve the performance standards as stated in EXHIBIT A after a period of testing and operation as stated in EXHIBIT D, and if Plant has been built and operated in accordance with KATZEN design and instructions, and if sufficient feedstock and utilities are available for the testing, then, by mutual agreement, KATZEN will undertake to do whatever commercially reasonable re-design is required to correct plant deficiencies that are the result of design error on the part of KATZEN. Any disputes arising that cannot be resolved by negotiation shall be submitted to a duly constituted body according to the rules of the American Arbitration Association as the sole remedy. Under no circumstances shall Licensor be liable for or obligated to pay any consequential or indirect damages. Furthermore, KATZEN's maximum total liability to Licensee or any other party combined from any and all causes including breach of warranty, representation, performance or in regard to patent infringement or otherwise shall under no circumstances exceed US$471,250 including its cost of re-designing charged at its usual and customary rates. This warrantee will be paid only as; first, deductions from the final fixed-fee payment due and second,

Initial [signature]
Date 12/3/02 [signature] -08

**KATZEN**
INTERNATIONAL, INC.

8

Case 11-80562   Doc 165   Filed 06/14/11   Page 13 of 20

refund from previously received license fees. Under no circumstances will a warrantee payment be due unless all other fees due have been timely paid for this license and for the Consulting Services contract dated October 11, 2006 between KATZEN and Clean Burn Fuels.

## VI. TERM AND MODIFICATIONS

6.1    This Agreement shall extend in perpetuity from the date of execution of this Agreement unless sooner terminated in accordance with the terms of this Agreement. The license granted herein is conditional upon KATZEN receiving its full license and consulting services fees due. In the event that KATZEN does not receive its full license and consulting services fees due, KATZEN shall have the right to cancel this license upon 30 days prior written notice.

6.2    Failure to commence operations of Plant, through no fault of Licensor, shall not entitle Licensee to return of license fee payment, and failure to commence operations shall not be a waiver of payment due Licensor.

6.3    Licensor shall have the right, at its option, to cancel and terminate this License Agreement and license in the event that the Licensee, its successors or permitted assigns, enter into any agreement to sub-license or assign this License Agreement without the prior consent of the Licensor as required by Article IX hereof.

6.4    In the event that the Licensor becomes involved in insolvency, dissolution, bankruptcy or receivership proceedings wherein the trustee, receiver or other agent acting on behalf of Licensor has a right or option to reject this License Agreement with Licensee, then in such case the Licensee shall continue to have the right to use Licensed Process notwithstanding such rejection or termination of this License Agreement. Licensor shall have the right, at its option, to cancel and terminate this License Agreement and license

Initial PJM  DC
Date 12/3/08  12-8-08

**KATZEN**
INTERNATIONAL, INC.

9

in the event that Licensee shall become involved in insolvency, dissolution, bankruptcy, or receivership proceedings, or in the event that Licensee shall discontinue its business for any reason, except as provided for in 9.1 and 11.1.

6.5 In the event that this License Agreement is terminated in accordance with the provisions of this Article VI, Licensee shall continue to be bound by the provisions of Articles II, III and IV hereof, and any and all of Licensee's obligations in this Agreement and any other agreements with KATZEN.

## VII. FORCE MAJEURE

7.1 No failure or omission by Licensor or by Licensee in the performance of any obligations of this Agreement shall be deemed a breach of this Agreement nor create any liability if the same shall arise from any cause or causes beyond the control of Licensor or Licensee, as the case may be, including, but not restricted to, the following, which for the purpose of the Agreement shall be regarded as beyond the control of the party in question:

> Acts of God, acts or omissions of any government or any agency thereof, compliance with request, recommendations, rules, regulations or orders of any governmental authority or any officer, department, agency or instrumentality thereof, fire, storm, flood, earthquake, volcanic eruption, accidents, acts of the public enemy, war, rebellion, insurrection, riot, sabotage, invasions, quarantine restrictions, strike, lockout disputes or differences with workmen, transportation embargoes or failure or delays in transportation.

## VIII. PATENT INDEMNITY

8.1 Licensor makes no representations that the use of KATZEN Developments does not infringe on any unexpired patent and Licensor does not warrant the validity or enforceability of any patent issued on any application

Initial PWY JC
Date 12/3/08  12-3-08

10

**KATZEN**
INTERNATIONAL, INC.

Case 11-80562   Doc 165   Filed 06/14/11   Page 15 of 20

and will not indemnify any licensee. As of the date of this License Agreement, Licensor knows of no conflicting patents, and has no outstanding claims of patent infringement filed against Licensor.

## IX. ASSIGNABILITY

9.1    This Agreement shall not be assignable by Licensee in whole or in part without the consent of Licensor which consent shall not be unreasonably-withheld or delayed PROVIDED HOWEVER Licensee may without obtaining such consent assign, transfer or part with any of its rights, duties or obligations under this Agreement to any parent or subsidiary corporation of Licensee or an affiliate of Licensee, PROVIDED FURTHER HOWEVER that such proposed assignee or transferee as the case may be and Licensee promptly execute an agreement in favor of Licensor by which the assignee or transferee as the case may be, agrees to be bound by all of the terms, agreements, covenants and conditions contained in this Agreement and by which Licensee agrees that it shall remain responsible for all liabilities and responsibilities hereunder notwithstanding such assignment or transfer. Affiliate for the purpose of this provision means a body corporate which is controlled by a person or group of persons who control Licensee or a body corporate in which Licensee is the registered and beneficial owner of more than fifty (50%) percent of the votes that may be cast to elect directors of such body corporate. An amalgamation is not an assignment for the purposes of this Agreement.

## X. CHOICE OF LAW AND JURISDICTION

10.1 Recipient understands and agrees that KATZEN is providing the Confidential Information to Recipient in reliance upon this Agreement, and Recipient will be fully responsible to KATZEN for any damages, including special, indirect or consequential damages arising out of or in connection with

Initial PWM  JC
Date 1/2/3/02   12-3-08

**KATZEN**
INTERNATIONAL, INC.

11

this Agreement, whether based on contract or tort, including negligence or otherwise, costs or harm caused to KATZEN by breach of this Agreement by Recipient or any of its officers, agents, directors, employees, consultants, or affiliates. Recipient acknowledges and agrees that a breach of any of its promises or agreements contained herein will result in irreparable injury to KATZEN for which there will be no adequate remedy at law, and KATZEN shall be entitled to apply for equitable relief, including temporary and permanent injunction, without providing a bond or other security, and specific performance in the event of any breach or threatened breach or intended breach of this Agreement by Recipient. Such remedies, however, shall not be deemed to be exclusive remedies for any breach of this Agreement, and shall be in addition to all other remedies available at law or in equity.

10.2 It is understood and agreed that the State of Ohio shall be deemed to be the place of execution of this License Agreement, and all questions pertaining to the interpretation of the provisions hereof shall be interpreted in accordance with the laws of the State of Ohio, without regard to the conflict of laws provisions, and each party intends to be legally bound thereby. The parties hereby consent and agree to the exclusive Jurisdiction of the courts of Hamilton County, Ohio and consent and agree that Service of Process by Regular U.S. Mail is consented to by the recipient thereof.

## XI. SALE OF PLANT

11.1 Should Plant be sold by Licensee prior to the termination of Licensee's obligations hereunder, Licensee agrees that prior to the sale of said Plant it will obtain from the prospective owners and operators thereof the execution of an agreement in writing to abide by the provisions of this License Agreement including the Confidentiality and Non-Use Agreement as

Initial _PWY_ _JC_
Date 12/3/08  12-3-08

**KATZEN** INTERNATIONAL, INC.

12

Case 11-80562    Doc 165    Filed 06/14/11    Page 17 of 20

hereinabove described. Sale of Plant shall not release Licensee from any of its obligations pursuant to this License Agreement.

## XII. NOTICES

12.1 All notices, payments or statements given under this License Agreement shall be in writing and shall be deemed to have been properly addressed when, if given to Licensor, it shall be addressed to President at the address above given and sent by certified mail. The date of service shall be deemed to be the date on which notice, payment or statement was posted. Notices to Licensee may be similarly given addressed as follows:

> Clean Burn Fuels
> 109 Willesden Drive
> Cary, NC 27513
>
> Attention Jack Carlisle

Either party may give written notices of a change of address, or addressee, and after such notice of such change has been received, any notice, payment or statement hereafter shall be given to such party as above provided at such changed address.

## XIII. ENUREMENT

13.1 This License Agreement shall be binding upon and shall enure to the benefit of Licensor and its assigns and successors in interest, and shall be binding upon and shall enure to the benefit of the Licensee and its permitted assigns and successors in interest.

Initial [signature]
Date 12/3/08  12-3-08

KATZEN
INTERNATIONAL, INC.

13

Case 11-80562    Doc 165    Filed 06/14/11    Page 18 of 20

## XIV. NO PERSONAL LIABILITY

14.1 It is understood and agreed between the parties to this Agreement that notwithstanding any other provision of this Agreement, and notwithstanding the choice of laws provision of this Agreement, that any liability of KATZEN International, Inc. shall be solely corporate liability, and there shall be no personal liability of any kind or nature of any person associated with KATZEN International, Inc., including, but not limited to any shareholder, director, officer, employee, consultant, representative, attorney, accountant, or any other person employed by or associated with KATZEN International, Inc.

14.2 It is understood and agreed between the parties that the above provision shall apply regardless of any statute, law, rule or regulation then in force in regards to the choice of law designated to govern the terms of this Agreement, or in regards to any other law, rule or regulation that may be determined in the future to be applicable to this contract.

## XV. MISCELLANEOUS

15.1 Licensee, during the term of this license, and for one year (1) year after its termination, shall not solicit for hire as an employee, consultant or otherwise any of KATZEN's employees or consultants, who have had direct involvement and service to the Licensee with regard to the project, without KATZEN's expressed written consent.

15.2 This License Agreement sets forth the entire agreement and understanding between the parties as to the subject matter of this License Agreement and merges all prior discussions and writings between them, and neither of the parties shall be bound by any conditions, definitions, warranties or representations with respect to the subject matter of this License Agreement other than as expressly provided in this License Agreement or as duly set forth

Initial PWM OC
Date 12/5/08  12-3-08

**KATZEN**
INTERNATIONAL, INC.

14

Case 11-80562   Doc 165   Filed 06/14/11   Page 19 of 20

subsequent to the date hereof and signed by an authorized person or officer of the party to be bound hereby.

IN WITNESS WHEREOF, the parties hereto have caused this License Agreement to be executed as of the date and year first mentioned above.

KATZEN International, Inc.

By: *Philip W. Madson*
Print Name: Philip W. Madson
Title: President
Date: December 3, 2008

LICENSEE

Clean Burn Fuels

By: *Carlisle*
Print Name: Jack Carlisle
Title: President
Date: 12-3-08

REE:plh
Attachments

**KATZEN**
INTERNATIONAL, INC.

15